UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GLORIA REGINA GARCIA PARRA,

                 Petitioner,

     v.                                        9:26-cv-00363 (AMN)

DAVID FAVRO, *in his official capacity as Warden of the Clinton County Jail*; JAMES BAUSCH, *in his official capacity as Acting Deputy Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement*; PHILIP RHONEY, *in his official capacity as Acting Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement*; TODD LYONS, *in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement*; PAMELA BONDI,[1] *in her official capacity as U.S. Attorney General*; KRISTI NOEM,[2] *in her official capacity as Secretary of Homeland Security*,

                 Respondents.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **BOROWSKI WITMER IMMIGRATION LAWYERS**<br>4343 Union Road<br>Buffalo, New York 14225<br>*Attorneys for Petitioner* | **MATTHEW BOROWSKI, ESQ.** |
| **UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF NEW YORK**<br>100 South Clinton Street<br>Syracuse, New York 13261<br>*Counsel for Federal Respondents* | **DAVID M. KATZ, ESQ.**<br>Assistant United States Attorney |

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, a public "officer's successor is automatically substituted as a party."  Fed. R. Civ. P. 25(d).

[2] *Id.*

*Bausch, Rhoney, Lyons, Bondi, and Noem*

**NO APPEARANCES:**

**DAVID FAVRO**
*State Respondent*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

On March 6, 2026, United States Immigrations and Customs Enforcement ("ICE") agents arrested petitioner Gloria Regina Garcia Parra ("Petitioner") as she attended a scheduled appointment with United States Citizenship and Immigration Services ("USCIS") and detained her at the Clinton County Jail in Plattsburgh, New York.  Dkt. No. 3-1 at ¶¶ 13, 15.

Later that day, Petitioner filed an emergency petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking, *inter alia*, immediate release.  Dkt. No. 1 ("Petition").

That same day, the Court issued an order directing the above-captioned federal officers ("Federal Respondents") and David Favro ("State Respondent" and, together with the Federal Respondents, "Respondents") to show cause why the Petition should not be granted.  Dkt. No. 2. The Court also set a briefing schedule, scheduled a hearing for March 17, 2026, and prohibited Respondents from moving Petitioner outside the jurisdiction of the Northern District of New York while this matter is pending.  *Id.*

On March 25, 2026, following careful consideration of the parties' submissions, Dkt. Nos. 1, 3-5, 7-8, and arguments during the hearing, the Court issued a short written order granting the Petition and ordering Petitioner's immediate release.  Dkt. No. 9.  The Federal Respondents have submitted a status report stating that Petitioner was released the next day.  Dkt. No. 10.

The Court previously indicated that it would issue a longer written decision explaining its

ruling in due course, *see* Dkt. No. 9 at 3,[3] and now sets forth that explanation.

## II.   BACKGROUND

### A. Petitioner's Presence in the United States

Petitioner is a native and citizen of Ecuador. Dkt. No. 1 at ¶ 1; Dkt. No. 3-1 at ¶ 4. On or about April 2, 2009, United States Customs and Border Patrol encountered Petitioner in Arizona, determined that she lacked proper documentation, and detained her. Dkt. No. 3-1 at ¶ 4; Dkt. No. 3-2 at 25-27. An asylum officer subsequently determined that Petitioner demonstrated a credible fear of persecution or torture and, on May 28, 2009, issued Petitioner a notice to appear ("Notice") in removal proceedings under Section 240 of the Immigration and Nationality Act ("INA").[4] Dkt. No. 3-1 at ¶ 5; Dkt. No. 3-2 at 19-20. The Notice charged Petitioner as subject to removal under Section 212(a)(6)(A)(i) of the INA. Dkt. No. 3-2 at 19. The Notice ordered Petitioner to appear before an immigration judge in Arizona on a date "to be set[.]" *Id.*

On June 15, 2009, an immigration judge in Arizona ordered Petitioner released on bond. Dkt. No. 3-1 at ¶ 6. Petitioner was released from ICE custody shortly thereafter. *Id.* at ¶ 7. On

---

[3] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

[4] "In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ('IIRAIRA'), Congress established the two main processes for removing noncitizens deemed ineligible to enter or remain in the United States. The 'usual removal process' is commonly referred to as 'Section 240' and is codified in 8 U.S.C. § 1229a. Section 240 proceedings involve an evidentiary hearing before an immigration judge, where a noncitizen may 'attempt to show that he or she should not be removed.' This process was established by Congress to create 'a 'streamlined' removal process . . . '[f]or illegal aliens already present in the U.S.'' In these proceedings, noncitizens have a right to hire counsel, to a reasonable opportunity to examine evidence against them, to present evidence on their own behalf, and to cross-examine any government witnesses. The proceedings themselves are recorded, typically take place over the course of multiple hearings and months, and upon a decision by the immigration judge, either party may appeal to the Board of Immigration Appeals ('BIA'). The BIA's decision may then be appealed to a United States court of appeals." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 290-91 (E.D.N.Y. 2025) (alterations in original) (citations omitted).

August 13, 2009, an immigration judge in Arizona changed the venue of Petitioner's removal proceedings to Chicago and granted Petitioner's attorney's motion to withdraw. *Id.* at ¶ 8.

On May 13, 2010, Petitioner did not appear in immigration court in Chicago[5] and an immigration judge ordered Petitioner removed "in absentia on the charges as set out in the notice to appear." Dkt. No. 3-2 at 14 (the "*In Absentia* Order"); Dkt. No. 3-1 at ¶ 10. ICE subsequently prepared a Form I-205 "Warrant of Removal/Deportation" ("Form I-205") and a Form I-294 "Warning to Alien Ordered Removed or Deported," both dated August 4, 2010. Dkt. No. 3-1 at ¶ 11; Dkt. No. 3-2 at 7-9.

Petitioner subsequently married an American citizen, with whom she has three minor children (fifteen years old, eleven years old, and nine years old), all of whom are also American citizens. Dkt. No. 1 at ¶ 31; Dkt. No. 4 at 1, 5; Dkt. No. 7-2 at 1.

In May 2016, Petitioner's husband filed a Form I-130 "Petition for Alien Relative" ("Form I-130") on her behalf, Dkt. No. 7-2, "which is the first step in the process to gain lawful permanent residence status[,]" *Chen v. Noem*, No. 26-cv-1109, 2026 WL 380712, at *1 (S.D.N.Y. Feb. 11,

---

[5] The parties dispute whether Petitioner received proper notice of this hearing. *Compare* Dkt. No. 1 at ¶ 1, *with* Dkt. No. 3-1 at ¶ 9. This and other issues are currently being litigated in immigration court, where Petitioner has moved to reopen the removal proceedings. *See, e.g.,* Dkt. No. 8; *see also Mavungo-Raymond v. Nessinger*, No. 26-cv-013, 2026 WL 161358, at *2-3 (D.R.I. Jan. 21, 2026) (McConnell, C.J.) ("In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ('IIRIRA'), which codified the right of every noncitizen ordered removed to file a 'motion to reopen' their removal proceedings. 'A motion to reopen is a form of procedural relief that asks the [BIA] to change its decision in light of newly discovered evidence or a change in circumstances since the hearing.' 'The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings.'") (alteration in original) (citations omitted). At the hearing in this matter, Petitioner argued that the pendency of the motion to reopen stays the *In Absentia* Order and the Federal Respondents conceded Petitioner's ability to seek a stay of the *In Absentia* Order following the filing of a motion to reopen. *See also Lopez v. Trump*, No. 25-cv-04826, 2025 WL 3274224, at *2 (S.D.N.Y. July 10, 2025) ("The filing of a motion to re[open] stays the removal of the alien pending disposition by the immigration judge.") (citing 8 U.S.C. § 1229a(b)(5)(C)(ii)).

2026).  This Form I-130 listed, *inter alia*, Petitioner's address and her "Alien Registration Number[,]" and further indicated that Petitioner entered the United States without inspection in 2009.  Dkt. No. 7-2 at 1.  USCIS approved this Form I-130 in December 2016.  *Id.*

Petitioner subsequently filed two additional applications with immigration authorities: (i) a Form I-360 "Petition for Amerasian, Widower, or Special Immigrant," Dkt. No. 5-1; *see also Emokah v. Mukasey*, 523 F.3d 110, 113 n.4 (2d Cir. 2008) ("The I-360 petition is a form that relatives of U.S. citizens . . . must file in order to obtain immigrant status based on their 'qualifying relationship to a citizen[.]'") (citations omitted); and (ii) a Form I-485 "Application to Register Permanent Residence or Adjust Status," Dkt. No. 5-2; *see also Owusu-Boateng v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-812, 2025 WL 832198, at *2 n.4 (D. Conn. Mar. 17, 2025) ("An I-485 Form is completed to apply to register as a permanent resident or adjust status.  'Adjustment of status is the process . . . to apply for lawful permanent resident status (. . . applying for a Green Card) when [one is] present in the United States.'") (alterations in original) (citation omitted).

**B.  Petitioner's Detention**

In connection with one of Petitioner's pending applications with immigration authorities, she and her husband attended a scheduled appointment with USCIS in Albany on March 6, 2026.  Dkt. No. 3-2 at 5; Dkt. No. 7-1 at ¶ 4.  ICE agents arrested Petitioner at the USCIS office.

The initial declaration and attached exhibit submitted by the Federal Respondents indicated that it was "as [Petitioner] was appearing for a I-130 interview[,]" Dkt. No. 3-2 at 5, that "ICE officers confirmed Petitioner's identity, displayed her removal order and the Form I-205 that was issued on August 4, 2010, and took her into custody[,]" Dkt. No. 3-1 at ¶ 13.  In response to the Court's inquiry during the hearing, the Federal Respondents submitted a subsequent declaration and exhibit indicating, instead, that Petitioner's appearance at USCIS "relat[ed] to her I-485

5

application, not an I-130 interview" and that it was "at the conclusion of her [ ] appointment" that Petitioner "was showed both her orders of removal from the Immigration Judge and I-205 warrant of removal" and taken into custody.[6]  Dkt. No. 7-3 at 4; *see also* Dkt. No. 7-1 at ¶¶ 4, 8.

In addition to the Form I-205 dated August 4, 2010, Dkt. No. 3-2 at 7-8, the Federal Respondents have also submitted a Form I-205 dated March 6, 2026, *id.* at 1-2.  The original Form I-205 indicates that an immigration judge ordered Petitioner removed based on Section 212(a)(6)(A)(i) of the INA, consistent with the Notice and the *In Absentia* Order.  *See* Dkt. No. 3-2 at 7, 14, 19.  The new Form I-205 suggests that an immigration judge also ordered Petitioner removed based on a separate provision of the INA, Section 212(a)(7)(A)(i)(I).[7]  Dkt. No. 3-2 at 1.

Following Petitioner's arrest, she was transported to the Clinton County Jail, where she remained detained until her release on March 26, 2026.  Dkt. No. 3-1 at ¶¶ 13, 15; Dkt. Nos. 9-10.  During that time, Petitioner did not receive a bond hearing.  Dkt. No. 1 at ¶ 1.

### C.  Petition for Writ of Habeas Corpus

The one-count Petition asserts that Petitioner's detention violates her Fifth Amendment right to due process.  *Id.* at ¶¶ 28-31.

### III.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241, a district court is authorized "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  It is well-settled that "[n]oncitizens are also entitled to challenge through habeas corpus the legality of their ongoing detention."  *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing

---

[6] The record before the Court contains one order of removal, Dkt. No. 3-2 at 17, and no party has argued that any others exist, *see generally* Docket Sheet.

[7] This suggestion is unsupported by any other record submitted by the Federal Respondents.

*Boumediene v. Bush*, 553 U.S. 723, 771 (2008)). "The 'necessary scope' of this review and resulting relief 'in part depends upon the [procedural] rigor of any earlier proceedings.'" *Id.* (alteration in original) (quoting *Boumediene*, 553 U.S. at 781). And "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* (first quoting *Boumediene*, 553 U.S. at 781-83, 786; and then citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 301-02 (2001)).

## IV.   DISCUSSION

### A.  Habeas Requirements

The Court finds that the Petition is properly before it. "Generally, '[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States,' he must file the petition in the district of confinement and name his immediate custodian as the respondent." *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025) (alteration in original) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004)). The Petition was filed in the district where Petitioner is confined and names Respondents as Petitioner's immediate custodians. Dkt. No. 1. The Federal Respondents have appeared through counsel. *See generally* Docket Sheet.

### B.  Statutory Basis for Detention

The Petition primarily asserts[8] that Petitioner's detention is unlawful, whether "under 8 U.S.C. § 1225(b)(2)(A) and/or 8 U.S.C. § 1231[.]" Dkt. No. 1 at ¶ 1. In opposition, the Federal Respondents argue that "[t]his case does not implicate 8 U.S.C. § 1225 or 8 U.S.C. § 1226, which

---

[8] The Court has jurisdiction to consider the one-count Petition's Fifth Amendment challenge to Petitioner's detention. *See, e.g., Ozturk*, 136 F.4th at 397 ("Section 1252(g) 'does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention.'") (alteration in original) (citations omitted); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 406 (S.D.N.Y. 2025) ("[T]he Court may consider the constitutional challenges raised in the petition, as they do not run afoul of 8 U.S.C. § 1252's jurisdiction-stripping clauses.").

cease to apply once a final order of removal is entered[,]" and that, instead, "Petitioner has been properly detained pursuant to 8 U.S.C. § 1231(a)(6)." Dkt. No. 3 at 6; *see also id.* at 14 ("Because § 1231(a)(6) authorizes Petitioner's detention, Petitioner's claim that she has been denied due process fails.").

The Court finds that Section 1231(a)(6) does not provide Respondents the authority to detain Petitioner years after the *In Absentia* Order became final.[9]  Other courts have reached the same conclusion.  *See, e.g., Diallo v. Joyce*, No. 25-cv-9909, --- F. Supp. 3d ----, 2025 WL 3718477, at *1 (S.D.N.Y. Dec. 23, 2025) ("The government's sole authority for [petitioner]'s detention is 8 U.S.C. § 1231.  But that statute provides no basis for [petitioner]'s detention thirteen years after her removal order became final.") (citations omitted); *Chen*, 2026 WL 380712, at *1 (finding unlawful petitioner's detention under Section 1231 more than twenty years after order of removal became final); *Acosta v. Warden of the Golden State Annex Det. Facility*, No. 26-cv-00530, 2026 WL 350831, at *4 (E.D. Cal. Feb. 9, 2026) (Nunley, C.J.) ("The Court therefore rejects Respondents' argument that Petitioner can be [ ]detained under § 1231(a)(6) more than five years after his removal period concluded.").

As other courts have explained, "[t]he INA divides aliens subject to a final order of removal into two groups for purposes of detention: those within a 90-day removal period and those outside the removal period." *Xiu Qing You v. Nielsen*, No. 18-cv-5392, 2020 WL 2837022, at *6 (S.D.N.Y. June 1, 2020) (citing 8 U.S.C. § 1231(a)(1)).  As to the former, "Section 1231 provides that during a specified ninety-day removal period, 'the Attorney General shall detain the alien.'" *Diallo*, 2025

---

[9] As a result, and given the lack of clarity from the Federal Respondents over when and which documents were shown to Petitioner in connection with her arrest, the Court finds it unnecessary to address the validity of either the aged Form I-205 from 2010 or the facially incorrect Form I-205 from 2026.  The Court does note, however, that the latter appears unnecessary if the former remained in effect and was served on Petitioner.

8

WL 3718477, at *1 (citing 8 U.S.C. § 1231(a)(1)(A) & (a)(2)(A)).  "After that period end[s], section 1231 is clear about what happens next—'If the alien . . . is not removed within the removal period, the alien, pending removal, *shall be subject to supervision* under regulations prescribed by the Attorney General.'"  *Id.* (second alteration in original) (citing 8 U.S.C. 1231(a)(3)); *see also Xie Qing You*, 2020 WL 2837022, at *6 ("Where the alien is not removed during that period, he 'may be detained beyond the removal period' if he 'has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'  Absent such a determination, an alien outside of the removal period must be released subject to conditions of supervision.") (first quoting 8 U.S.C. § 1231(a)(6); and then citing 8 U.S.C. § 1231(a)(3)).

The parties agree that the 90-day removal period triggered by Petitioner's 2010 *In Absentia* Order is long past.  *See, e.g.,* Dkt. No. 3 at 6; *see also Lema v. Rhoney*, No. 26-cv-06020, 2026 WL 380402, at *1 (W.D.N.Y. Feb. 11, 2026) (Wolford, C.J.) (discussing calculation of 90-day removal period).  The Federal Respondents nonetheless contend that, because Petitioner is still subject to a final order of removal, Section 1231(a)(6) authorizes her detention and that "the decision whether to detain an alien . . . lie[s] within the discretion of the Executive Branch."  Dkt. No. 3 at 14.

This Court joins those that have found this sweeping argument unpersuasive.  *See, e.g., Diallo*, 2025 WL 3718477, at *2 ("The government's argument is wrong.  Section 1231(a)(6) provides for a period of *continued* detention for certain classes of people who have not been removed at the conclusion of the ninety-day removal period.  It isn't a free-roaming right to arrest and detain people any time it sees fit, even a decade after the fact."); *Acosta*, 2026 WL 350831, at *3 ("The fact that Petitioner has a final order of removal does not alter this Court's analysis.  First and foremost, 'the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.'  Thus, even if ICE had discretion to arrest and detain Petitioner

9

pursuant to the final order of removal, its exercise of that discretion must comport with due process.") (quoting *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017)) (additional citation omitted); *see also Chen*, 2026 WL 380712, at *1 (S.D.N.Y. Feb. 11, 2026) ("[T]he government had no statutory authority to detain [petitioner], because it failed to adhere to the statutory requirements of 8 U.S.C. §1231.").

As a result, the Court agrees with Petitioner that Section 1231(a)(6) does not provide Respondents with the authority to detain her.  Dkt. No. 1 at ¶ 1.

### C. Due Process

"No one disputes that the Fifth Amendment entitles noncitizens to due process of law." *Velasco Lopez*, 978 F.3d at 850 (citations omitted).  "Accordingly, the Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.* (citation omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvyas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted).

Here, Petitioner has established a complete lack of process in connection with her detention. *See generally* Dkt. No. 1.  Regardless of whether Petitioner received proper notice of the May 2010 immigration court proceeding at which she was not present, *see supra* n.5, Petitioner and her family have had numerous interactions with immigration authorities over the years since that proceeding.  Indeed, in May 2016, Petitioner's husband filed a Form I-130 petition to adjust her status and provided her address, Alien Registration Number, and indicated that she had entered the country unlawfully in 2009.  Dkt. No. 7-2 at 1.  USCIS approved this petition in December 2016.  *Id.*; *see also* Dkt. No. 7-1 at ¶ 5.  Thereafter, Petitioner herself filed with immigration authorities a Form I-360 petition and a Form I-485 to obtain lawful status.  Dkt. Nos. 5-1, 5-2; *see*

10

*also Chen*, 2026 WL 380712, at \*1 ("While the government cites to *Lin v. Francis*, No. 25 Civ. 10001, 2025 WL 3751855 (S.D.N.Y. Dec. 29, 2025), that case involved the unique situation of an individual who was subject to a final order of removal after failing to attend his removal hearing and being out of contact with [immigration authorities] since then, rendering him inaccessible to [immigration authorities], a point that the court repeatedly emphasized."). Last month, when Petitioner attended a scheduled appointment with USCIS in connection with one of her pending applications, ICE agents separated Petitioner from her family and detained her.[10] *See, e.g., Feitoza v. Noem*, No. 26-cv-40011, 2026 WL 252422, at \*6 (D. Mass. Jan. 30, 2026) ("[T]he Court concludes that using the INA's adjustment-of-status procedure as a vehicle to lure applicants to federal facilities to conduct 'gotcha' law enforcement is not in accordance with the law. Other courts have reached the same conclusion.") (collecting cases).

Additionally, the Federal Respondents do not assert that they made any individualized determination with respect to Petitioner's detention. *Xie Qing You*, 2020 WL 2837022, at \*6. Even now, for example, the Federal Respondents do not argue that Petitioner poses a danger to the community or a risk of flight. *See generally* Dkt. No. 3. As the Court previously noted, "[a]ccording to documents submitted by the Federal Respondents, Petitioner has no criminal history." Dkt. No. 9 at 2. Petitioner's flight appears equally unlikely. She is in her second decade of marriage to an American citizen. Dkt. No. 7-2 at 1. She is the mother of three minor children,

---

[10] Because Petitioner was detained without any process at all, the Court need not address the legal effect, if any, of her pending applications with respect to her final order of removal, nor the Court's jurisdiction over such issues. *See supra* n.8. As noted earlier, it now appears undisputed that her removal has been stayed as a result of the ongoing litigation in immigration court. *See supra* n.5; *see also Xol-Maas v. Francis*, No. 26-cv-00025, 2026 WL 457005, at \*9 (S.D.N.Y. Feb. 18, 2026) ("And because the Government cannot, consistent with the Constitution, effectuate Petitioner's removal in the near term, his continued detention pursuant to 8 U.S.C. § 1231(a) likewise violates his due process rights.").

all of whom are also American citizens.  Dkt. No. 4 at 1, 5.  Immigration authorities have approved a Form I-130 petition filed on her behalf.  Dkt. No. 7-1 at ¶ 5.  Petitioner was arrested at a scheduled appointment with immigration authorities in connection with her subsequent application to obtain lawful status in the country in which she has resided for seventeen years.  Dkt. No. 5-2 at 1; Dkt. No. 7-1 at ¶ 4.  And Petitioner is actively litigating in immigration court.  Dkt. No. 8.  In any event, the Federal Respondents identify no individualized determination in the record to the contrary.  *See generally* Dkt. Nos. 3, 7.

Finally, the Federal Respondents make no argument that Petitioner received an opportunity to be heard, either before or after her detention.  *See, e.g.,* Dkt. No. 3 at 14-15; *Chen*, 2026 WL 380712, at *1 ("[A]s in *Diallo*, the government makes no argument that it provided any notice or opportunity to be heard.  So the government violated [petitioner]'s procedural due process rights when it detained her, in violation of its own regulations and the United States Constitution.") (citations omitted); *accord Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492 (S.D.N.Y. 2025) ("A person's liberty cannot be abridged without 'adequate procedural protections.'") (quoting *Zadvydas*, 533 U.S. at 690).

With respect to analyzing due process claims in connection with detention purportedly pursuant to Section 1231, courts have applied the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See, e.g., Zhu*, 798 F. Supp. 3d at 415 n.4; *Diallo*, 2025 WL 3718477, at *5-6.  "The three *Mathews* factors are: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'"  *Velasco Lopez*, 978 F.3d

at 851 (quoting *Mathews*, 424 U.S. at 335).

Given the record before the Court, these factors weigh uniformly in favor of finding that Petitioner's Fifth Amendment right to due process was violated. As just detailed, Petitioner was deprived of her liberty interest without any process. *Id.* ("Here, the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment.") (citation omitted); *Diallo*, 2025 WL 3718477, at *6 ("[Petitioner] has an interest in being free from imprisonment, and she was afforded no procedural protections before the government detained her, increasing the risk of an erroneous deprivation of her liberty. Indeed, these risks are at their apex in this case, where [petitioner] was arrested and detained for no discernable reason, with no identified risk of flight or danger, no prior outreach, and with no country identified that she could even be sent to."). And the Government has not articulated any special interest in removing Petitioner, particularly in light of her circumstances as discussed above. *See, e.g., Zhu*, 798 F. Supp. 3d at 415 n.4 ("[T]he Government's interests, presumably in effectively carrying out orders of removal, are legitimate, but would not be undercut by additional procedural safeguards[.]"); *Diallo*, 2025 WL 3718477, at *6 ("It also wouldn't undercut the government's interests to require it to provide [petitioner] with the same minimal procedural safeguards that it must provide before re-detaining people who, *unlike* [petitioner], violate their conditions of release.").

### D. Appropriate Remedy

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008) (citations omitted); *see also Boumediene*, 553 U.S. at 779 ("[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained—though release need not be the

13

exclusive remedy and is not the appropriate one in every case in which the writ is granted.") (citations omitted).

The Court finds that immediate release is the appropriate remedy for the Fifth Amendment violation here. *See, e.g., Diallo*, 2025 WL 3718477, at *6 ("[Petitioner]'s arrest and detention without following these basic procedures plainly violated her due process rights. In *Zhu*, as here, the 'typical remedy' for unlawful executive detention . . . is, of course, release.'") (second alteration in original) (citations omitted); *Chen*, 2026 WL 380712, at *2 ("[T]he government violated [petitioner]'s procedural due process rights when it detained her, in violation of its own regulations and the United States Constitution. [Petitioner] is ordered to be released immediately, and the government may not detain her for any immigration-related reason absent further order of this Court.") (citation omitted); *see also Xol-Maas*, 2026 WL 457005, at *9 (ordering immediate release for habeas petitioner subject to final order of removal entered *in absentia*); *Lema*, 2026 WL 380402, at *2 (ordering immediate release for habeas petitioner subject to final order of removal).

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED**; and the Court further

**ORDERS** that, absent a change in relevant circumstances, Respondents may not detain Petitioner Gloria Regina Garcia Parra for any immigration-related reason absent further order of this Court; and the Court further

**ORDERS** that the Clerk of the Court enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

Dated: April 16, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge

14